113　371
f121　172

BRIGGS *v.* BRIGGS.

PAROL AGREEMENT TO CONVEY LAND—SPECIFIC PERFORMANCE.
　A parol agreement by parents to convey to their son lands adjoining their own in consideration of his making his home thereon, and working and improving the same, may, if the son fulfills the conditions, be specifically enforced by his wife and children after his decease.

Appeal from Kent; Grove, J. Submitted April 29, 1897. Decided June 7, 1897.

Bill by Melissa M. Briggs and others against Spencer B. Briggs and Sarah A. Briggs for the specific performance of a verbal contract to convey land. From a decree for complainants, defendants appeal. Affirmed.

*Taggart, Knappen & Denison,* for complainants.

*Earle & Hyde,* for defendants.

LONG, C. J. This bill of complaint was filed in April, 1896, asking for the specific performance of a contract. The complainant Melissa M. Briggs is the widow, and Eva May Briggs the infant daughter, of Elias V. Briggs, deceased, and, through him, claim the right to a conveyance of an 80-acre farm in Solon township, Kent county, Mich., the legal title to one-half of which stands in the defendant Sarah A. Briggs, and the legal title to the other half in the defendant Spencer B. Briggs, who were the mother and father of the deceased, Elias V. Briggs. The bill alleges a gift of the premises, and an oral contract for the conveyance thereof, made by the defendants to Elias V. Briggs in his lifetime, followed by many years of possession, improvement, etc. The answer of the defendants denies any gift or contract, but alleges that the occupation by Elias V. Briggs and wife of the

premises in question has been under other and different arrangements. Proofs were taken in open court, and the court found, upon the merits of the controversy, for the complainants. A decree for specific performance, in accordance with the prayer of the bill, was entered December 21, 1896. From this decree the defendants appeal.

Complainants' contention is that the defendants, Spencer B. and Sarah A. Briggs, husband and wife, had resided for many years in Solon township, and had considerable property; that their son Elias V. Briggs was married to the complainant, then Melissa Russell, on November 14, 1878; that he was then 21 years of age, and she was of the same age; that they resided until the next spring with the defendants as one family, but they both thought there was not land enough for all, and they planned to go away and start by themselves; that the father and mother objected to this, as they wished their son to remain with them or near them; that accordingly, on April 10, 1879, the defendant Sarah A. Briggs purchased two 40-acre parcels of land in the neighborhood, but not immediately adjacent to each other (another 40 intervening), for a home for her son and his wife; and that she and her husband agreed with them that the son and his wife should move upon the place so purchased, make it their home, and help improve it, pay off an existing incumbrance, remain in the neighborhood, where the father and son could work together, and that it should be their home, and should be conveyed absolutely to the son. Complainants contend that this agreement was carried out by the son and wife, who did move upon the property, and occupied it from that time until the death of Elias, which occurred November 2, 1895, such occupation having thus covered a period of 16½ years; that in 1886, however, it was agreed between all the parties that one of these 40-acre parcels, being the one upon which the dwelling and buildings were not situated, should be exchanged with a third person for a 40 adjacent to the home 40, so that there might be an entire 80-acre farm lying together

as one parcel, and that the 40 so received in exchange should be substituted for the other in all respects, and should be conveyed, as it had been agreed the other should be conveyed, to Elias V. Briggs; that, in the making of this exchange, the defendant Spencer B. Briggs took the active part, and caused the deed for this last 40 so received to be made to him, instead of to his wife, so that, during the remainder of the life of Elias, his possession and occupation were of the entire 80 so constituting one farm, the legal title of one 40 standing in Spencer B. Briggs, and of the other 40 in Sarah A. Briggs; that it was continually understood by Elias and Melissa Briggs that the farm was theirs, and that they were entitled to a conveyance of it; that, under this understanding, they occupied and improved the farm, took part in erecting buildings and paying off the incumbrance, paid taxes, and in all respects treated the property as their own, and put into it in this way $16\frac{1}{2}$ years of their labor; and that no trouble arose until after the death of Elias. The widow, after the death of Elias, continued to occupy the farm with her daughter, then nine years old. Her brother, William Russell, resided there with her, and worked the farm, under a lease which had been taken by him from Elias before the death of the latter. December 24, 1895, the defendants served upon the widow and her brother a notice to quit, claiming possession of the premises, and shortly afterwards commenced summary proceedings before a justice for their eviction. The bill in this cause was thereupon filed, the widow and her daughter claiming title through the contract with Elias V. Briggs, William Russell claiming a possessory right under his lease, and the Peninsular Trust Company being joined as administrator of the estate of Elias V. Briggs.

The defendants contend that, when Elias went on the land, he became a tenant of the mother; that the land was fully paid for, she paying for one 40, and the father for the other; that, when Elias went upon the premises, it was agreed between him and defendants that he could have

all he could raise on the land if he would keep the same up in good shape, and pay all taxes thereon, and that, if he failed to do so, defendants were to have one-third of the crops to pay taxes and other expenses; and that the father was to furnish team and tools to work the land.

There was a large number of witnesses sworn in the case, but much of the testimony has no great bearing upon the main contention here. The contract set out in the bill is substantially as before stated. The whole controversy is one of fact. The defendants contend that the complainants' proofs do not support the contract, and that no such arrangement as claimed was ever made, but that, on the other hand, the arrangement as shown by the testimony is such as defendants contend for. The court below found with the complainants. He had the opportunity to see the witnesses, and judge of their fairness and candor. While this is not conclusive upon us, yet many times such fact has great weight, especially where there is great conflict of evidence. If the contract was entered into as claimed by complainants, it is certainly one which should be enforced.

The defendants had two sons, and no other children. These sons married sisters. At the time Elias married, he took his wife home to his father's house. His brother, Charles, and his wife were living there at that time. The talk became general that the defendants would buy a farm for Elias if he would move onto it. It was bought, and Charles' wife, as well as Melissa, testify that Elias was to have a deed of it. It appears by the testimony of many witnesses that the place was always called Elias'. He moved onto it, and apparently occupied it as his own. It is true that the father did many things there,—paid taxes, helped to put up the buildings and improve the farm; but all these acts are in keeping with the relationship between the parties. Charles and his wife lived at home. There were three 80's of land; and it is apparent to us that it was the intention of the defendants to give Elias this farm of 80 acres, and deed it to him; that he

should have the title; and that Elias so understood it when he went into possession. No trouble seems to have arisen until after Elias died. Mr. Russell had gone on there as a tenant. He was the brother of the widow, and it is evident his presence there was distasteful to the defendants, and trouble arose. It would not profit to set out the testimony, as upon the whole case we agree with the court below. This class of contracts has been upheld by this court many times, and the citation of authorities is unnecessary.

The decree below must be affirmed, with costs of both courts.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.